**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| KAARLA HILLS | * | CIVIL ACTION NO. | |
| | * | | |
| Plaintiff, | * | | |
| | * | JUDGE | |
| VS. | * | | |
| | * | | |
| | * | MAGISTRATE JUDGE | |
| TANGIPAHOA PARISH | * | | |
| SCHOOL SYSTEM | * | | |
| | * | | |
| Defendant. | * | | |
| | * | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

1.   This is an action to halt and seek redress for the unlawful discrimination that the defendant has implement in its business practices.

2.   The Americans with Disabilities Act ("ADA") expressly prohibits discrimination in employment on the basis of a disability or perceived disability.  42 U.S.C. §§ 12101, *et seq.*

3.   Despite these mandated provision, the defendant has violated the Plaintiff's rights.

## PARTIES

4.   The Plaintiff is Ms. Kaarla Hills ("Ms. Hills") who was employed by the Tangipahoa Parish School System at O.W. Dillon Leadership Academy ("O.W. Dillon") in Kentwood, Louisiana. She is a person of the age of majority, identifies as African-American, and is female.

5.   The Defendant is the Tangipahoa Parish School System ("Defendant").  It may be served with process through the Office of Superintendent Melissa Martin Stilley in accordance with La. C.C.P. art. 1265.  This is so because Melissa Martin Stilley serves as the chief executive officer of the Tangipahoa Parish School System.

## FACTUAL BACKGROUND

6.  Ms. Hills was originally hired by O.W. Dillon in August 2014 as a paraprofessional teacher's aid and worked with Pre-K teacher Patrice Warford.

7.  On March 1, 2018, Ms. Hills met with Principal Hugh Wallace, Assistant Vice Principal Rebecca Burkett, Lead Teacher Henrietta Vernon, and Disciplinarian Sandra Turner.

8.  Unrelated to the meeting's original purpose, Assistant Vice Principal Burkett informed Ms. Hills of a website or websites accusing Ms. Hills of having HIV, specifically www.stdregistry.com and/or www.stdcarriersdatabase.com.

9.  Despite those accusations Ms. Hills does not have HIV.

10. Upon information and belief, this rumor was brought to the attention of O.W. Dillon's administration by P.E. Teacher Andre Cryer.

11. During the meeting Assistant Vice Principal Burkett stated the accusations have nothing to do with Ms. Hills' job but wanted to bring it to Ms. Hills' attention.

12. Before Ms. Hills' could offer any response, Lead Teacher Vernon offered her opinion that the website is fake.

13. Ms. Hills' stated in the meeting that she was not specifically aware of the websites but was aware of the rumor, which she believes was originated by her children's father, Elton Lee, and his girlfriend, Darnelia Muse.

14. Upon information and belief Darnelia Muse is P.E. Teacher Andre Cryer's sister.

15. Following that March 1, 2018 meeting, O.W. Dillon's administration and staff began to spread the rumor and treat her in a manner which violated her rights.

16. At some point subsequent to the March 1, 2018 meeting, Principal Wallace conducted a private meeting with Pre-K teachers Patrice Warford and Jenita James-Jackson.

17. Following that meeting, Ms. Warford directly asked Ms. Hills whether she had HIV or AIDS and told Ms. Hills that Principal Wallace met with her and Ms. James-Jackson regarding Ms. Hills' alleged HIV or AIDS condition.

18. Upon information and belief, Principal Wallace asked Ms. Warford and Ms. James-Jackson whether they knew of Ms. Hills' alleged condition and inquired how Ms. Hills' behaved in the classroom.

19. Although Ms. Hills had a positive working rapport with Principal Wallace and other employees of O.W. Dillon prior to the March 1, 2018 meeting, Ms. Hills thereafter became isolated by no choice of her own.

20. Subsequent to the March 1, 2018 meeting, Principal Wallace, Disciplinarian Sandra Turner, and Nurse Suzanne Robinson each refused to speak or interact with Ms. Hills whatsoever.

21. Also subsequent to the March 1, 2018 meeting, music teacher Andre Harris refused to conduct music instruction with Ms. Hills present.

22. As a paraprofessional teacher's aid, Ms. Hills escorted her pre-k class to Mr. Harris' classroom each Tuesday and Thursdays and every other Friday and was required to remain in Mr. Harris' classroom during music instruction.

23. On at least three separate occasions following the March 1, 2018 meeting, Mr. Harris was unexpectedly absent from his classroom, resulting in her pre-k students repeatedly missing music instruction without warning.

24. However, upon information and belief, Mr. Harris during those weeks did complete music instruction for the other O.W. Dillon pre-k classes Ms. Hills did not assist as a paraprofessional teacher's aid.

25. Then, Ms. Hills' own minor children who previously attended O.W. Dillon directly asked her whether she had HIV or AIDS.

26. When she asked where they heard that rumor, they said other children at the school were talking about it.

27. On March 19, 2018, Ms. Hills found the environment at O.W. Dillon intolerable and took leave under the Family Medical Leave Act ("FMLA") due to the mounting stress posed by the grown and effect of the rumor.

## JURISDICTION AND VENUE

28. The Court has jurisdiction under 28. U.S.C. § 1331 and 28 U.S.C. § 1367.

29. Ms. Hills timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant on October 4, 2018.

30. The EEOC then issued a right to sue letter on October 9, 2018.

31. Accordingly, this suit may properly be filed.

32. Venue is proper because the discrimination occurred in this District.

33. The Court has jurisdiction over the Defendant because it is located and operates in the State of Louisiana.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

34. The preceding paragraphs are incorporated as if fully stated herein.

35. The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

36. This discrimination includes "utilizing standard, criteria, or methods of administration that have the effect of discrimination."  42 U.S.C. § 12112(b)(3)(A).

37. Courts have specifically recognized a cause of action for disability harassment by analogizing to Title VII.

38. Both Title I of the ADA and Title VII use the language "terms, conditions, and privileges of employment," which Courts have interpreted to be the relevant portion from which to draw a harassment claim.

39. To establish a hostile work environment claim under the ADA, the plaintiff must prove that (1) she is a qualified individual with a disability, (2) she was subjected to unwelcome harassment, (3) the harassment was based on plaintiff's disability, (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment, and (5) some factual basis exists to impute liability for the harassment to the employer.  *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229 (5th Cir. 2001).

40. The ADA Amendments of 2008 further explain that "the term 'disability' means, with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such impairments; *or being regarded as having such an impairment*."  42 U.S.C. § 12102(1)(A-C) (emphasis added).

41. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment."  42 U.S.C. § 12102(3)(A).

42. HIV-positive status is a recognized disability under the ADA, from which members of the O.W. Dillon administration and staff perceived she suffered.

43. As explained above, O.W. Dillon's principal, Hugh Wallace, inquired with Ms. Hills' coworkers about whether and how the alleged HIV-positive status impacted her ability to perform her job.

44. Ms. Hills was accordingly perceived as having an impairment pursuant to 42 U.S.C. § 12102(3)(A) and therefore meets prong number one.

45. Members of the O.W. Dillon administration and staff that previously engaged in a healthy working rapport with Ms. Hills thereafter began to both ignore her and actively avoid her to the detriment of her pre-K students.

46. Moreover, Principal Wallace directly subjected Ms. Hills to harassment by asking her coworkers about their knowledge of her sensitive and protected health information which had the effect of propagating the rumor.

47. This harassment only began after the rumors were reveled in the closed-door and private March 1, 2018 meeting involving only Principal Wallace, Assistant Vice Principal Burkett, Lead Teacher Vernon, and Disciplinarian Sandra Turner.

48. As such, the harassment and isolation came as a result of the perception that Ms. Hills is HIV-positive.

49. The treatment Ms. Hills received following the March 1, 2018 meeting was sufficiently severe to interfere with her job performance, as in part evidenced by Mr. Harris' refusal to conduct music lessons for pre-K students with her present.

50. Ultimately the circumstance resulted in Ms. Hills being constructively discharged when she was forced to take FMLA leave due to the resulting stress and mental anguish.

51. Finally, a basis exists to impute liability to the Defendant because it knew or should have known of this harassment and failed to take prompt, remedial action.

52. Ms. Hills was fully qualified to be in her position as a paraprofessional teacher's aid at O.W. Dillon.

53. Upon information and belief, the Defendant is a covered employer to which the ADA applies because it has well above fifteen employees.

54. Because of Defendant's actions, Ms. Hills has suffered and will continue to suffer economic and non-economic harm.

## COUNT II: VIOLATION OF LOUISIANA EMPLOYMENT DISCRIMINATION LAW

55. The preceding paragraphs are incorporated as if fully stated herein.

56. The Louisiana Employment Discrimination Law requires that a covered employer may not discriminate on the basis of race, color, religion, sex, national origin, or disability status.  La. R.S. 23:301, *et seq.*

57. O.W. Dillon employs far more than twenty full time employees and is therefore a covered employer under La. R.S. 23:302.

58. As detailed in the ADA allegations outlined above, Ms. Hills suffered discrimination on the basis of her perceived disability.

59. As such, O.W. Dillon is in violation of the Louisiana Employment Discrimination Law.

## COUNT III: DEFAMATION

60. The preceding paragraphs are incorporated as if fully stated herein.

61. Defamation is a tort which involves the invasion of a person or entity's interest in her or its reputation and good name.  *Sassone v. Elder*, 626 So. 2d 345, 350 (La. 1993).

62. Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) actual or implied malice (fault) on the part of the publisher; and (4) resulting injury.  *Cangelosi v.*

*Schwegmann Brothers*, 390 So. 2d 196 (La. 1980); *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So. 2d 552, 559, *citing Restatement (Second) of Torts* § 558 (1977).

63. The defamatory statements made against Ms. Hills involve the propagation of the false rumor that she is allegedly HIV-positive.

64. Principal Wallace is the individual who propagated that rumor to Ms. Hills' coworkers regarding Ms. Hills' alleged HIV-positive status.

65. As clearly stated above, these statements are false because Ms. Hills is HIV-negative.

66. Fault is generally considered to be malice, actual or implied.  *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669.

67. Actual malice exists if the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.  *Allen v. Thomson Newspaper, Inc.*, 2004-1344 (La. App. 3 Cir. 2/2/05), 893 So. 2d 227, 232.

68. Reckless disregard occurs when the defendant publishes the statement despite having a high awareness of the statement's probable falsity.  *Davis v. Borskey*, 94-2399 (La. 9/5/95), 660 So. 2d 7.

69. In this case, Principal Wallace was present for the March 1, 2018 meeting in which it was explicitly discussed that online allegations against Ms. Hills were false rumors and she is not HIV-positive.

70. However, despite being present for that meeting and knowing that Ms. Hills does not have HIV, Principal Wallace nonetheless continued to spread the rumor.

71. As such, Principal Wallace was either fully aware that the defamatory statements he made were false or he had a high awareness of the statement's probable falsity resulting in the defamatory statements being made by with malice.

72. As a result of the false, defamatory statements made by Principal Wallace to Ms. Hills' coworkers at O.W. Dillon, Ms. Hills has sustained injury to her reputation as to lower her in the estimation of the community and/or to deter others from associating or dealing with her.

73. Further, Ms. Hills has been severely embarrassed and experiences ongoing stress due to the spread of this false rumor and has sought treatment from a psychiatrist as a result.

74. Explained above, members of the O.W. Dillon administration and staff explicitly refused to communicate with her

### COUNT IV: PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS

75. The preceding paragraphs are incorporated as if fully stated herein.

76. The Louisiana Supreme Court recognizes the tort of invasion of privacy by unreasonable disclosure of embarrassing private facts. *Jaubert v. Crowley Post-Signal, Inc.*, 35 So.2d 1386, 1389 (La. 1979).

77. "An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest." *Id.*

78. When determining reasonableness, the Court must balance "the plaintiff's interest in protecting his privacy from serious invasions and the defendant's interest in pursuing his course of conduct." *Id.*

79. Defendant's disclosure to Ms. Hills' coworkers was unreasonable because her interest in preventing the spread of this false rumor regarding her alleged HIV-positive status was, and is, monumentally important.

80. Principal Wallace had no discernable legitimate interest in holding private discussions with Ms. Hills' coworkers about her health status and its alleged impact upon her job performance.

81. By discussing Ms. Hills' protected health information with third parties unauthorized to receive it, Principal Wallace created an intimidating, hostile, or abusive working environment.

## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82. The preceding paragraphs are incorporated as if fully stated herein.

83. Defendant's actions stated herein constitute negligent infliction of emotional distress pursuant to La. C.C. art. 2315.

84. The Supreme Court of Louisiana allows recovery for negligent infliction of emotional distress when there is an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. Dept. of Wildlife and Fisheries*, 567 So. 2d 1081, 1096 (La. 1990).

85. Examples of cases in which the defendant negligently inflicted emotional distress, as cited by the Louisiana Supreme Court, include a "failure to install, maintain or repair consumer products," "failure to take photographs or develop film," and "negligent damage to one's property while the plaintiffs were present and saw their property damaged." *Moresi v. Dept. of Wildlife and Fisheries*, 567 So. 2d 1081, 1096 (La. 1990) (*citing Pike v. Stephens Imports, Inc.*, 448 So. 2d 738 (La.App. 4th Cir. 1948); *Grather v. Tipery Studios, Inc.*, 334 So. 2d 758 (La.App. 4th Cir. 1976); *Holmes v. Le Cour Corp.*, 99 So. 2d 467 (La.App. 1958); *Lambert v. Allstate Insurance Co.*, 195 So. 2d 698 (La.App. 1st Cir. 1967)).

86. As stated above, Principal Wallace directly inquired with Ms. Hills' coworkers regarding their potential knowledge of her HIV status, third parties unauthorized to receive her protected health information.

87. This rumor propagated by Principal Wallace ultimately resulted in Ms. Hills' minor children hearing from other children attending O.W. Dillon that their mother allegedly suffers from HIV.

88. These actions, combined with the blatant isolation she experienced following the March 1, 2018 meeting, have caused Ms. Hills to experience more than mere frustration or disturbance.

89. Ms. Hills has instead been severely embarrassed and experiences ongoing stress due to being depicted in such a defamatory manner before her coworkers and children.

90. In order to cope with this stress, Ms. Hills has sought the treatment of a psychiatrist.

91. This stress and reputational damages is what caused Ms. Hills to take FMLA leave status from work.

92. As a result of the same, Ms. Hills has earned less income and is entitled to compensation.

## JURY TRIAL REQUEST

Plaintiff hereby notifies the Court and Defendant of her intent to seek a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant, including the following relief:

a. Appropriate injunctive relief, including but not limited to an order restraining Defendant from engaging in further discriminatory conduct of the types alleged in this Complaint, and from submitting negative references to any of Plaintiff's potential future employers;

b. Back pay in an amount to be determined at trial;

c. Front pay;

d. Compensatory and consequential damages, including for emotional distress, against Defendant;

e.  Punitive damages against Defendant;

f.  Pre-judgment and post-judgment interest at the highest lawful rate;

g.  Attorney's fees and costs of this action; and

h.  Any such further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

/s/ John E. Bicknell, Jr.
Galen M. Hair, T.A. (LSBA No. 32865)
John E. Bicknell, Jr. (LSBA No. 36802)
SCOTT, VICKNAIR,
HAIR & CHECKI, LLC
909 Poydras Street, Suite 1100
New Orleans, LA 70112
T: (504) 684-5200
F: (504) 613-6351