UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| KAARLA HILLS | CIVIL ACTION |
|---|---|
| VERSUS | NO. 19-5 |
| TANGIPAHOA PARISH SCHOOL SYSTEM | SECTION "R" (2) |

## ORDER AND REASONS

Defendant Tangipahoa Parish School System moves for partial summary judgment on plaintiff's ADA and defamation claims.[1] Because plaintiff fails to provide adequate evidence to support her hostile environment, constructive discharge, or defamation claims, the Court grants the motion as to those claims.

## I. BACKGROUND

Plaintiff Kaarla Hills worked as a pre-kindergarten paraprofessional teacher's aid at O.W. Dillion Leadership Academy, part of the Tangipahoa Parish School System, in Kentwood, Louisiana.[2] In March 2018, Hills had a meeting with various school officials, including the principal and assistant

---

[1] R. Doc. 14.
[2] *See* R. Doc. 1 at 1-2 ¶¶ 4-6.

vice principal.³ At the meeting, the assistant vice principal informed Hills that a website accused Hills of having HIV.⁴ Hills responded that while she was not aware of the website, she was aware of the rumor. She said that she believed it was started by her children's father and his girlfriend, who was related to the school's physical education teacher.⁵ Hills is not HIV positive.⁶

Hills states that following the meeting, administration and staff at O.W. Dillon began to spread the rumor that she had HIV.⁷ She claims that the school's principal inquired of her coworkers whether Hills had HIV and whether it impacted her job performance.⁸ She avers that many of her co-workers, with whom she had previously had a cordial relationship, began to ignore and actively avoid her.⁹ Hills own children—who attended the school—asked her whether she had HIV or AIDS after hearing the rumor from other students at school.¹⁰ After a few weeks, Hills claims she found the environment so intolerable that she took leave under the Family Medical Leave Act due to stress caused by the rumor.¹¹

---

3   *See id.* at 2 ¶ 7.
4   *See id.* at 2 ¶ 8.
5   *See id.* at 2 ¶¶ 13-14.
6   *See id.* at 2 ¶ 9.
7   *See* R. Doc. 1 at 2 ¶ 15.
8   *See id.* at 3 ¶¶ 17-18.
9   *See id.* at 3 ¶¶ 19-24.
10  *See id.* at 4 ¶¶ 25-26.
11  *See id.* at 4 ¶ 27.

Hills sued the Tangipahoa Parish School System, alleging, among other claims, a violation of the ADA and a defamation claim.[12] The School System seeks summary judgment on Hills's ADA and defamation claims.[13]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[12] *See generally id.*
[13] R. Doc. 14.

3

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III. DISCUSSION

Hills brings five claims against defendant: (1) violation of the Americans with Disabilities Act, (2) violation of the Louisiana Employment Discrimination Law, (3) defamation, (4) public disclosure of embarrassing private facts, and (5) negligent infliction of emotional distress.[14] Defendant moves to dismiss only plaintiff's ADA and defamation claims. Defendant also moves to dismiss plaintiff's claim for punitive damages. The Court addresses each argument in turn.

---

[14]  *See generally* R. Doc. 1.

## A. Americans with Disabilities Act

### 1. *Perceived as Having a Disability*

Defendant first argues that plaintiff cannot maintain a claim under the ADA because she has not established even a "perceived" disability. Defendant's specific argument seems to be that because the O.W. Dillion administration and staff did not consider Hills unable to continue working in her role as a teacher's aide and did not terminate her, plaintiff's ADA claim must fail.

Defendant is incorrect. The ADA prohibits discrimination against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," *id.* § 12102(1)(A), or "being regarded as having such an impairment," *id.* § 12102(1)(C). The statute continues:

> n individual meets the requirements of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity.

*Id.* § 12102(3)(A) (emphasis added). HIV is a disability under the ADA. *Bragdon v. Abbott*, 524 U.S. 624, 637 (1998) ("HIV infection satisfies the

statutory and regulatory definition of a physical impairment during every stage of the disease.").

Hills therefore must demonstrate only that she was "subjected to an action prohibited under this chapter because of an actual or perceived . . . impairment," and she need not demonstrate that an impairment limited or was perceived to limit a major life activity. 28 U.S.C. § 12102(3)(A). In other words, plaintiff could maintain a hostile environment claim under the ADA even if defendant did not consider her perceived disability to prevent her from doing her job. Thus, defendant's argument that plaintiff's claim must be dismissed because the school's staff and administration did not believe Hills could not perform her job fails.

2. *Hostile Environment Claim*

Defendant also moves to dismiss plaintiff's hostile environment claim. To succeed on a hostile environment claim under the ADA, a plaintiff must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

7

*Flowers v. S. Reg. Phys. Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001) (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).

Here, defendant argues that the fourth condition—that the harassment complained of affected a term, condition, or privilege of employment—is not met. The standard for workplace harassment in this circuit is high. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). A court must consider all of the relevant circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Hills alleges that she was harassed because (1) she was asked if she was HIV positive by her own children; (2) she was asked whether she was HIV positive by co-workers; (3) she was isolated from various coworkers,

including the principal, disciplinarian, and school nurse, with whom she had previously enjoyed a positive working relationship; and (4) a music teacher was unexplainably absent three times when Hills escorted pre-kindergarten students to his music class.

The question posed to plaintiff by her children is not evidence of harassment by defendant or any of defendant's agents. And plaintiff's remaining allegations are essentially a question from a co-worker, isolation from various other co-workers, and a music teacher refusing to teach class in her presence. But this is not enough to support a hostile environment claim. The Fifth Circuit has held that "[i]t is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense." *McConathy*, 131 F.3d at 564.

Plaintiff points to a Fifth Circuit case in which isolation served as *part* of the basis for a hostile environment claim. In that case, *Flowers v. South Regional Physicians Services, Inc.*, 247 F.3d 229 (5th Cir. 2001), the Fifth Circuit upheld a jury verdict in favor of a plaintiff in a hostile environment case, in part because when the plaintiff's co-workers learned of her HIV-positive status, some co-workers became very distant. *Id.* at 236-37. But in *Flowers*, the plaintiff was also subjected to significant harassment not

9

present here. For example, after revealing her HIV-positive status, Flowers was pulled into unexpected meetings, where she was written up repeatedly, where such an occurrence had not taken place before. *Id.* at 237. Further, at one of these meetings, her superior called her a "bitch" and said he was "tired of her crap." *Id.* Her employer also forced her to undergo four drug tests in one week. *Id.* And while plaintiff has complained of no conduct that was physically intimating, in *Flowers*, the plaintiff's supervisor physically removed a tape recorder from her coat pocket against her will. *Id.* The harassment plaintiff complains of—which is largely isolation from a limited number of co-workers—is different in kind. And although having a music teacher refuse to teach a class in a plaintiff's presence is greater than social isolation insomuch as it arguably interfered with plaintiff's job, it is still of a different nature than the verbal abuse and physical intimidation present in *Flowers*, and does not support a hostile environment claim.

Indeed, the Fifth Circuit has found no cognizable hostile environment claim in circumstances significantly more antagonistic than plaintiff alleges here. For example, in *Gowesky v. Singing River Hospital System*, 321 F.3d 503, 509 (5th Cir. 2003), an ER physician who had been exposed to hepatitis C brought a hostile work environment claim. She alleges that her employer required that she present a full medical release, take additional courses, and

10

submit weekly blood samples. *Id.* at 510. She also alleged that her employer made disparaging comments about his unwillingness to be treated by a dentist infected with hepatitis C, or to allow the employee to work with his child. *Id.* This is harassment significantly more direct and pervasive than the questions Hills was asked and the isolation she endured from her colleagues. Yet the Fifth Circuit found no cognizable hostile environment claim, as Gowesky's allegations did not pass the high bar for such a claim in this circuit.

Similarly, in *Credeur v. Louisiana Through Office of Attorney General*, 860 F.3d 785 (5th Cir. 2017), the Fifth Circuit found no hostile environment claim when a plaintiff with kidneys issues complained of (1) an order to attend the meeting with the Director of Administration Services; (2) the requirement to work at least three to four house in the office and to not work from home; (3) criticism of her work performance; (4) threats of termination; (5) a request to sign false payroll documents; and (6) an order to take leave without pay instead of FMLA." *Id.* at 796. The harassment in *Credeur* was significantly more severe and pervasive than the harassment alleged by plaintiff here.

Because plaintiff's allegations of harassment do not rise to the high level required by the Fifth Circuit to maintain a cognizable hostile environment claim under the ADA, her claim must be dismissed.

3. *Constructive Discharge*

Defendant also moves to dismiss plaintiff's ADA claim on the grounds that plaintiff voluntarily left her position at O.W. Dillon. Plaintiff counters that she was constructively discharged. "Constructive discharge requires a greater degree of harassment than required by a hostile environment claim." *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). To prevail, Hills would have the burden of showing that her working conditions were "so intolerable that an employee in her position would [have felt] compelled to resign." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004) (citing *Webb v. Cardiothoracic Surgery Assoc. of N. Tex.*, 139 F.3d 532, 539 (5th Cir. 1998)). Having found that plaintiff cannot maintain a hostile work environment claim, the Court also finds that plaintiff does not meet the even higher bar to maintain a constructive discharge claim. To the extent plaintiff sought to bring a constructive discharge claim, the claim is dismissed.

## B. Defamation

Defendant also moves to dismiss plaintiff's defamation claim. "Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004). To prove defamation, a plaintiff must establish four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Id.* (quoting *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997)). Therefore, "in order to prevail on a defamation claim, a plaintiff must prove 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused the plaintiff damages.'" *Id.* at 139-140.

A plaintiff must allege "with reasonable specificity the defamatory statements allegedly published by defendant." *Fitzgerald v. Tucker*, 737 So. 2d 706, 713 (La. 1999). And while a plaintiff need not "state verbatim the words on which he bases his cause of action," he "must name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements." *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So. 2d 1211, 1218 (La. 2006).

13

Defendant argues that there can be no defamation claim, as plaintiff cannot identify competent evidence of a false statement. Indeed, plaintiff testified at her deposition that she had no personal knowledge that the administration or staff of O.W. Dillion spread the rumor she had HIV.[15] Plaintiff makes only four allegations from which a false statement could allegedly have arisen: (1) the March 1, 2018, meeting in which the assistant vice principal informed Hills that she was listed on a website as being HIV positive; (2) the meeting in which the principal asked two fellow teachers if Hills was HIV positive; (3) Hills's children asked if she was HIV positive, and (4) Hills's accusation that members of the O.W. Dillon's administration and staff began to spread the rumor that she had HIV.

1.  *The March 1, 2018, Meeting*

Statements made at the March 1, 2018, meeting cannot be the basis for a defamation claim. This is because defamation requires a *false* statement. At the March 1 meeting, the Assistant Vice Principal of O.W. Dillon brought to Hills's attention that a website accused her of having HIV, which plaintiff does not suggest is false. The administrator did not accuse Hills of having HIV. Indeed, at that meeting another school administrator immediately

---

[15] R. Doc. 14-3 at 32 ("Q. Do you have personal knowledge of anyone from O.W. Dillion administration and staff spreading a rumor you had HIV? A. No.").

14

offered her opinion that the website was fake. Because plaintiff cannot point to a false statement arising from this meeting, it does not give rise to a defamation claim.

2. *Principal Wallace's Meeting with Warford and James-Jackson*

Plaintiff's accusations regarding a meeting between Principal Wallace and two teachers at O.W. Dillon, Warford and James-Jackson, similarly does not give rise to a defamation claim. Hills's declaration states that "[u]pon information and belief, Principal Wallace asked Ms. Warford and Ms. James-Jackson regarding my alleged HIV or AIDS status."[16] But at the summary judgment stage, statements in affidavits must be "based on personal knowledge, and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003). This assertion therefore does not create a material fact issue to defeat summary judgment on defamation claim.

3. *Questions from Hills's Children*

Hills's affidavit states that "her own minor children who previously attended O.W. Dillion directly asked [her] whether she had HIV or AIDS."[17] Hills states that her children "said other children at school were talking about it."[18] Hills argues that because her children heard the rumor, defamatory

---

[16]   R. Doc. 16-1 at 2 ¶ 16.
[17]   R. Doc. 16-1 at 3 ¶ 23.
[18]   *Id.* at 3 ¶ 24.

statements must have been spread by defendant. This argument fails, as the law mandates that a plaintiff "must name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements." *Badeaux*, 929 So. 2d at 1218. Because this allegation does not name a speaker or a specific statement, it cannot be the basis for a defamation claim.

4. *Spreading the Rumor by the Administration*

Finally, Hills asserts in her affidavit that "[f]ollowing that March 1, 2018 meeting, O.W. Dillion's administration and staff began to spread the rumor and treat me in a manner which violated my rights."[19] But this statement, too, fails to allege a specific speaker who defamed Hills. Moreover, it directly contradicts plaintiff's deposition testimony. At her deposition, plaintiff was asked point blank: "Do you have personal knowledge of anyone from O.W. Dillion administration and staff spreading a rumor you had HIV?"[20] Plaintiff responded: "No."[21]

The sham affidavit rule states that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386

---

[19] R. Doc. 16-1 at 2 ¶ 13.
[20] R. Doc. 14-3 at 32.
[21] *Id.*

16

(5th Cir. 2000). If an affidavit diverges from deposition testimony, courts may disregard the affidavit when considering a summary judgment motion. *See, e.g., Powell v. Dallas Morning News, L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011) ("Courts have consistently disregarded such sham affidavits as nothing more than an attempt to 'manufacture a disputed material fact where none exists.'" (citing *Alberton v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984))). Here, there is a contradiction between plaintiff's deposition testimony and her sworn affidavit which merits application of the sham-affidavit rule. This allegation therefore also fails as the basis for a defamation claim.

### C. Punitive Damages

Defendant also moves to dismiss plaintiff's claim for punitive damages. In response plaintiff states that "[p]laintiff's position on punitive damages is that they are not at issue in this case" and that she is "not pursuing punitive damages in this matter."[22] The Court therefore grants defendant's motion to dismiss plaintiff's claim for punitive damages.

---

[22] R. Doc. 16 at 11.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion and dismisses plaintiff's hostile environment, constructive discharge, and defamation claims. The Court also dismisses plaintiff's claim for punitive damages.

New Orleans, Louisiana, this __16th__ day of March, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE