UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KAARLA HILLS                                          CIVIL ACTION

VERSUS                                                      NO. 19-5

TANGIPAHOA PARISH SCHOOL                      SECTION "R" (2)
SYSTEM

## ORDER AND REASONS

Defendant Tangipahoa Parish School System moves for summary judgment on plaintiff's remaining claims.[1]  Because plaintiff fails to provide adequate evidence to support her invasion of privacy, negligent infliction of emotional distress, or Louisiana Employment Discrimination Law claims, the Court grants the motion.

## I.    BACKGROUND

Plaintiff Kaarla Hills worked as a pre-kindergarten paraprofessional teacher's aide at O.W. Dillon Leadership Academy, part of the Tangipahoa Parish School System, in Kentwood, Louisiana.[2]  In March 2018, Hills had a meeting with various school officials, including the principal and assistant

---

[1]    R. Doc. 35.
[2]    *See* R. Doc. 37-3 at 1 ¶¶ 1, 3.

vice principal.[3]  At the meeting, the assistant vice principal informed Hills that a website accused Hills of having human immunodeficiency virus (HIV).[4]  Hills responded that while she was not aware of the website, she was aware of the rumor.[5]  She said that she believed it was started by her children's father and his girlfriend, who was related to the school's physical education teacher.[6]  Hills is not HIV-positive.[7]

Hills states that following the meeting, administration and staff members at O.W. Dillon began to spread the rumor that she had HIV.[8]  She claims that the school's principal had a meeting with two of her co-workers regarding her alleged HIV or AIDS status.[9]  Hills also avers that certain co-workers, including Principal Wallace, Disciplinarian Sandra Turner, and Nurse Suzanne Robinson, began to ignore and actively avoid her.[10]  Hills further states that her own children, who previously attended O.W. Dillon, at some point asked her whether she had HIV or AIDS after overhearing the rumor from other students at school, although the school is not identified.[11]

---

[3]     *See id.* at 1 ¶ 4.
[4]     *See id.* at 1 ¶ 5.
[5]     *See id.* at 2 ¶ 10.
[6]     *See id.* at 2 ¶¶ 10-12.
[7]     *See id.* at 1 ¶ 6.
[8]     *See* R. Doc. 37-3 at 2 ¶ 13.
[9]     *See id.* at 2 ¶¶ 14-15.
[10]     *See id.* at 3 ¶ 18.
[11]     *See id.* at 3 ¶¶ 23-24.

After a few weeks, Hills claims that she found the environment so intolerable that she took leave under the Family Medical Leave Act due to stress caused by the rumor.[12]

Hills sued the Tangipahoa Parish School System, alleging various claims.  The Court previously dismissed plaintiff's ADA and a defamation claim.[13]   The School System now seeks summary judgment on Hills's remaining claims.[14]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are

---

[12]   *See id.* at 3 ¶ 25.
[13]   *See* R. Doc. 29.
[14]   R. Doc. 35.

drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III. DISCUSSION

Hills has three remaining claims against defendant: (1) public disclosure of embarrassing private facts, (2) negligent infliction of emotional

distress, and (3) violation of the Louisiana Employment Discrimination Law.[15]

### A.   Public Disclosure of Embarrassing Private Facts

"A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts." *Juge v. Springfield Wellness, L.L.C.*, 274 So. 3d 1, 8 (La. App. 1 Cir. 2019). Plaintiff's complaint alleges a claim for the fourth theory: an invasion of privacy based on the unreasonable public disclosure of an embarrassing private fact.[16] "An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest." *Smith v. Ak. La. Gas Co.*, 645 So. 2d 785, 790 (La. App. 2 Cir. 1994).

Notably, plaintiff does not aver that defendants publicly accused her of being HIV-positive. And as the Court has already found, plaintiff stated in her deposition that she had no personal knowledge of anyone at O.W. Dillon spreading the rumor she had HIV.[17] Rather, the embarrassing fact plaintiff

---

[15]   *See* R. Docs. 1, 29.
[16]   R. Doc. 1 at 9-10.
[17]   *See* R. Doc. 29 at 14; R. Doc. 14-3 at 32.

identified is that her name and photos were on a sexually transmitted disease (STD) registry website, which identified her as having HIV.[18]   In her opposition, plaintiff does not identify any specific instance in which this fact was disclosed, other than to point to the deposition of Principal Hugh Wallace, during which he stated that the school would have no reason to exclude an HIV-positive employee from any job activities.[19]   It is therefore unclear which specific employees of defendant plaintiff alleges violated her privacy, or when they did so.

Even if plaintiff had pointed to a specific instance in which the faculty of O.W. Dillon publicly discussed that there were references to Hills on an STD registry website, plaintiff's claim would still fail.   Louisiana law makes clear that when a fact is easily accessible by the general public, it is not a private fact that gives rise to an invasion of privacy claim. *See Dileo v. Harry*, 238 So. 3d 549, 555 (La. App. 5 Cir.   2017) (holding that facts listed in a publicly available legal opinion cannot give rise to an invasion of privacy claim); *Jaubert v. Crowley Post-Signal, Inc.*, 375 So. 2d 1386, 1390-91 (La. 1979) ("[N]o right to privacy attaches to material in the public view.").   For example, in *Batts v. Capital City Press*, 479 So. 2d 534, 536-37 (La. App. 1

---

[18]      R. Doc. 37-3 at 3.
[19]      *See* R. Doc. 37 at 3-7; R. Doc. 37-2.

Cir. 1985), a plaintiff who had been a victim of a shooting brought a claim against a newspaper for publishing her identity and the fact she had been the victim of a crime.  The Louisiana Court of Appeal for the First Circuit held that plaintiff did not have a claim for publication of an embarrassing private fact because "the same information could have been obtained from a person legitimately located at the same place who happened to see the incident and could identify the party." *Batts* at 537.

Here, plaintiff's name and picture were listed on a public website, along with a listing suggesting she had HIV.  The website was accessible to the general public, including the administrators, teachers, and students associated with O.W. Dillon.  As such, the website listing is not a "private" fact that gives rise to an invasion of privacy claim.  Plaintiff's claim for public disclosure of a private fact must therefore be dismissed.

### B.    Negligent Infliction of Emotional Distress

Defendant also moves for summary judgment on plaintiff's NIED claim.  Louisiana allows recovery for unintentional or negligent infliction of emotional distress under La. Civ. Code art. 2315.  *See Pelitire v. Rinker*, 270 So. 3d 817, 829 (La. App. 5 Cir. 2019).  To recover for negligent infliction of emotional distress without an accompanying physical injury, "[t]here must be proof that the defendant violated some legal duty owed to the plaintiff,

and the plaintiff must meet the heavy burden of proving outrageous conduct by the defendant." *Id.* Conduct is considered outrageous when defendant "knew or should have known that his conduct, judged in the light of the effect such conduct would have on a person of ordinary sensibilities, would cause genuine and severe mental distress." *Covington v. Howard*, 146 So. 3d 933, 940 (La. App. 2 Cir. 2014).

Courts have found a defendant's actions sufficiently "outrageous" only in limited circumstances. For example, a Louisiana court found that a school administrator's expression of disbelief that a school football coach was having an affair with plaintiff's minor daughter did not give rise to an NIED claim. *Doe v. Dunn*, 890 So. 2d 727, 731-32 (La. App. 2 Cir. 2004). Similarly, courts have found behavior insufficiently outrageous when a groom left a wedding with his ex-wife, thereby distressing his new bride, *see Clay v. Sutton*, No. 53,333, 2020 WL 1036278, at *3-4 (La. App. 2 Cir. Mar. 4, 2020), and when a doctor had an affair with a plaintiff's wife while the couple was consulting the doctor about a treatment for infertility. *See Scarmado v. Dunaway*, 650 So. 2d 417, 420-21 (La. App. 5 Cir. 1995).

Plaintiff's opposition again does not point to any part of the record to establish an issue of material fact. It does, however, make clear that plaintiff believes her NIED claim arises from Principal Wallace's and other

administrators' discussing that Hills's name was listed on an STD registry website.[20]  Plaintiff's affidavit asserts only two specific instances when O.W. Dillon administration discussed that her name was listed on an STD registry website.  First, Hills points to the March 1, 2018, meeting in which Assistant Vice Principal Rebecca Burkett informed plaintiff that her name was listed on the websites.[21]  Second, Hills states that Principal Wallace met with two of Hills's co-workers, Patrice Warford and Jenita James-Jackson, regarding her alleged HIV status.[22]  Hills also notes that her children asked her whether she had HIV or AIDS.[23]  Hills has not alleged any "particular susceptibility to emotional distress" that defendant was aware of and therefore should have considered in approaching Hills.  *Succession of Harvey v. Dietzen*, 716 So. 2d 911, 916 (La. App. 4 Cir. 1998).

Focusing on the March 1, 2018, meeting, the Court finds that plaintiff does not carry the "heavy burden" of demonstrating that defendant's conduct was outrageous as required to support an NIED claim.  At that meeting, which included only five people, Assistant Vice Principal Burkett informed plaintiff that her name was listed on a website stating that she had HIV.[24]

---

[20]    *See* R. Doc. 37 at 6; *see also* R. Doc. 1 at 10-11 ¶¶ 82-92.
[21]    *See* R. Doc. 37-3 at 1-2 ¶¶ 5-9.
[22]    *See id.* at 2 ¶¶ 14-15.
[23]    *See id.* at 3 ¶ 23.
[24]    R. Doc. 37-3 at 1 ¶ 5.

Burkett emphasized that the accusations had nothing to do with Hills's job, but that she wanted to bring the website to Hills's attention.[25]   And the Lead Teacher, Henrietta Vernon, offered her opinion that the website was fake.[26]   This is not the sort of "outrageous" behavior necessary to give rise to an NIED claim, as it is not of the sort to alert the defendant that the conversation would cause a person of ordinary sensibilities "genuine and severe mental distress." *Covington*, 146 So. 3d at 940.   By Hills's own description, the meeting seems to have been conducted reasonably and respectfully.   This was therefore not "outrageous" behavior that would give rise to an NIED claim.

The statements in plaintiff's affidavit regarding Principal Wallace's meeting with Warford and James-Jackson similarly do not demonstrate that defendant's conduct was "outrageous."   Plaintiff states that at some point after the meeting on March 1, 2018, Wallace met with Warford and James-Jackson, two pre-kindergarten teachers with whom Hills worked.[27]   After the meeting, Warford asked Hills whether she had HIV or AIDS and told Hills that Wallace met with her and James-Jackson "regarding [Hills's] alleged

---

[25]   *Id.* at 2 ¶ 8.
[26]   *Id.* at 2 ¶ 9.
[27]   R. Doc. 37-3 at 2 ¶ 14.

HIV or AIDS status."[28]   Plaintiff produces no summary judgment evidence of what Wallace said at the meeting.[29]   But it is clear that Wallace did not tell Warford or James-Jackson that Hills had HIV or AIDS, as Warford later asked Hills whether she was HIV-positive, and Hills admits she has no knowledge of anyone at O.W. Dillon spreading the rumor that she had HIV.[30] Plaintiff also does not assert that either Warford or James-Jackson avoided or ignored her after the meeting.  As such, this incident is not "outrageous" behavior that would support an NIED claim, as it is not behavior that would cause a person of ordinary sensibilities "genuine and severe mental distress." *Covington*, 146 So. 3d at 940.

Plaintiff also notes that her children, who previously attended O.W. Dillon, asked her whether she had HIV or AIDS.[31]   But plaintiff does not properly link this incident to defendant.  Rather, she simply states that "[t]he students whom [the children] overheard almost assuredly heard the rumor

---

[28]    *Id.* at 2 ¶ 15.

[29]    Plaintiff's affidavit states that "[u]pon information and belief, Principal Wallace asked Ms. Warford and Ms. James-Jackson whether they knew of my alleged condition and inquired how I behaved in the classroom." *Id.* at 2 ¶ 16.  But, as the Court previously found, at the summary judgment stage, statements in affidavits must be "based on personal knowledge, and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003); *see also* R. Doc. 29 at 15.

[30]    R. Doc. 14-3 at 32.

[31]    R. Doc. 37 at 6; R. Doc. 37-3 at 3 ¶ 23.

directly from an employee at O.W. Dillon or through the 'grapevine' started by this employee(s) as adolescents do not frequent the web to determine if employees at their schools have been listed on std registry sites."[32]

This evidence falls short of the mark to support an NIED claim. The speculative jump that plaintiff makes that a rumor her children overheard necessarily started from O.W. Dillon staff is simply insufficient to create an issue of material fact that defendant engaged in outrageous conduct injurious to Hills. Plaintiff states that her children had previously attended O.W. Dillon, but she produces no evidence that the rumor made it from any identified member of the staff at O.W. Dillon to any of the unidentified children her children overheard, or that her children overheard the rumor while they were at O.W. Dillon.[33] Plaintiff also suggests that the rumor was initiated by the children's father and his girlfriend.[34] And, as discussed earlier, the website was publicly available to anyone, including plaintiff's children's classmates, to view. Evidence that plaintiff's children overheard a damaging rumor from unidentified children at an unidentified school, who heard it from an unidentified source does not support a claim for negligent infliction of emotional distress.

---

[32]   R. Doc. 26 at 6.

[33]   R. Doc. 37-3 at 3 ¶¶ 23-24.

[34]   *See id.* at 2 ¶ 10.

13

Because Hills fails to provide evidence of any behavior on the part of defendant that rises to the level of "outrageous," plaintiff's NIED claim must be dismissed.

### C.   Louisiana Employment Discrimination Law

Defendant moves to dismiss plaintiff's claim under the Louisiana Employment Discrimination Law.   The LEDL prohibits disability discrimination.  *See* La. R.S. 23:323 (prohibiting disability discrimination). With respect to claims of disability discrimination, the LEDL is modeled after federal law and should be construed in light of federal precedent.  *See, e.g.*, *Smith v. Thurman Oils, Inc.*, 951 So. 2d 359, 361 (La. App. 1 Cir. 2006) ("In interpreting Louisiana's employment discrimination laws, our courts have relied upon similar federal statutes and the interpreting federal jurisprudence.").  For the reasons explained in the Court's previous Order and Reasons, plaintiff's claim for disability discrimination under the ADA did not survive summary judgment.  And for the same reasons, plaintiff's LEDL claim for disability discrimination is fatally deficient. *See, e.g.*, *Barton v. Checkers Drive-In Rests., Inc.*, No. 11-186, 2011 WL 1193061, at *3 (E.D. La. March 28, 2011) ("Because Louisiana's statute is based on the ADA, the result of the court's analysis under either statute must, necessarily, be the

same.").  Indeed, plaintiff does oppose the entry of summary judgment on this claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.  Plaintiff's remaining claims are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this __3rd__ day of June, 2020.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE